## PUBLIC DEFENDER

**ADMINISTRATIVE LAW — RULEMAKING — PUBLIC INFORMATION ACT — STATUS OF ELIGIBILITY CRITERIA**

May 13, 1994

*The Honorable Robert C. Nalley*
*Chairman, District Advisory Board*
*District No. 4 of the Public Defender System*

You have requested our opinion concerning the legal status of the criteria used by the Public Defender to determine the eligibility of individuals for representation by that office. Specifically, you ask whether the criteria are "regulations" under the Administrative Procedure Act and whether they are open to inspection by the public or by the District Advisory Board.

For the reasons stated below, we conclude that the eligibility criteria of the Public Defender constitute a "regulation," within the meaning of the Administrative Procedure Act, and therefore are not enforceable unless properly adopted under the APA. Moreover, the criteria are open to inspection by any member of the public.

## I

### Eligibility For Representation By Public Defender

Under Article 27A, §4(a), "[i]t shall be the primary duty of the Public Defender to provide legal representation for any indigent defendant eligible for services under this article." An "indigent" defendant is "any person taken into custody or charged with a serious crime ... who under oath or affirmation subscribes and states in writing that he is financially unable, without undue hardship, to provide for the full payment of an attorney and all other necessary expenses of legal representation." Article 27A, §2(f).[1]

---

[1] A "serious crime" is defined as any felony and certain misdemeanors and other offenses. *See* Article 27A, §2(h).

The Public Defender unquestionably has authority to determine whether a defendant is "indigent" and therefore potentially eligible for representation by the Office of the Public Defender.  Article 27A, §7(a) provides as follows:

> Eligibility for the services of the Office of the Public Defender shall be determined on the basis of the need of the person seeking legal representation.  Need shall be measured according to the financial ability of the person to engage and compensate competent private counsel and to provide all other necessary expenses of representation.  Such ability shall be recognized to be a variable depending on the nature, extent and liquidity of assets; the disposable net income of the defendant; the nature of the offense; the effort and skill required to gather pertinent information; the length and complexity of the proceedings; and any other foreseeable expenses.

In theory, the Office of the Public Defender might administer these eligibility provisions on an entirely individualized basis, through an ad hoc assessment of each applicant's financial ability.

The Public Defender's current eligibility regulation, set out in COMAR 14.06.03.04, recapitulates the statutory provisions and incorporates certain "guidelines" drawn from *Baldwin v. State*, 51 Md. App. 538, 444 A.2d 1058 (1982).  But the regulation, too, is sufficiently general in its terms so that it might be applied case-by-case if the agency chose to administer the law in that manner.

As a matter of sound administrative practice, however, some more specific guidelines or criteria are probably necessary.  And, in fact, the office does use certain precise criteria to assess an application for representation.  A manual used by intake personnel contains a grid, arranged by income levels and number of dependents.  This grid plays a key role in eligibility determinations.  An applicant with income in excess of the amount allocated for a particular number of dependents will be denied representation.[2]

---

[2] This approach to eligibility is common in State programs of financial assistance. *See, e.g.,* COMAR 07.03.17.10J (schedule of income

(continued...)

The Office of the Public Defender is concerned that, if these specific criteria were known, defendants might tailor their applications to meet them. Thus, the office has not adopted these criteria by regulation or otherwise made them public. Your letter also mentions the disinclination of the Public Defender to disclose the criteria to the District Advisory Board, which evidently sought them as part of its effort to "study and observe the operation of the District Public Defender Office" and to "advise the Public Defender and the District Public Defender with respect to ... matters pertaining to the operation of the District Public Defender Office and the Public Defenders System." Article 27A, §10(c).

## II

### Application of Rulemaking Requirements

#### A. *Rulemaking Requirements Generally*

The Administrative Procedure Act, which under §10-102(a) of the State Government Article ("SG" Article) applies to virtually every unit in the Executive Branch, prescribes the procedural requirements for the adoption of a regulation.[3] If an agency's action is a "regulation," as that term is defined in the APA, "the action may be taken only in accordance with the rulemaking procedures contained in the [APA]." *CBS, Inc. v. Comptroller*, 319 Md. 687, 692, 575 A.2d 324 (1990). *See also, e.g.,* 76 *Opinions of the Attorney General* 19, 22 (1991); 68 *Opinions of the Attorney General* 9, 11 (1983); 65 *Opinions of the Attorney General* 396, 404 (1980).

If an agency takes an action subject to the APA's rulemaking process but fails to comply with these procedural requirements, the agency's action is unenforceable. SG §10-125(d)(3). *See, e.g.,* 78 *Opinions of the Attorney General* 8, 14 (1993) (interagency "memorandum of understanding" regarding eligibility for certain

---

[2] (...continued)
limits by household size to determine eligibility for Food Stamp Program).

[3] For a detailed review of the history, purpose, and requirements of the "regulation" component of the Administrative Procedure Act, *see* 75 *Opinions of the Attorney General* 37 (1990).

employment services unenforceable because it had not been adopted in accordance with the APA); 76 *Opinions of the Attorney General* 3 (1991) (statement by Physical Therapy Board about scope of practice of physical therapy of no legal effect because it had not been adopted in accordance with the APA); 57 *Opinions of the Attorney General* 478, 479-80 (1972) (eligibility requirement for welfare program invalid and unenforceable because it had not been adopted in accordance with the APA).

**B.     *Definition of "Regulation"***

The APA defines the term "regulation" quite broadly:

(1)    'Regulation' means a statement or an amendment or repeal of a statement that:

(i)   has general application;

(ii)  has future effect;

(iii)      is adopted by a unit to:

1.   detail or carry out a law that the unit administers;
2. govern organization of the unit;
3. govern the procedure of the unit;
4. govern practice before the unit; and

(iv) is in any form, including:

1. a guideline;
2. a rule;
3. a standard;
4. a statement of interpretation;
5. a statement of policy.

(2)   Regulation does not include:

(i)   a statement that:

1. concerns only internal management of the unit; and
2. does not affect directly the rights of the public or the procedures available to the public.

(ii)  a response of the unit to a petition for adoption of a regulation ...; or

(iii)     a declaratory ruling of the unit as to a regulation, order, or statute ....

SG §10-101(e).

Although the Court of Appeals has eschewed any "all-encompassing statement" of the circumstances under which rulemaking is legally required, the Court cited with approval a number of out-of-state cases holding "that legislative intent mandates use of the rulemaking process when the agency action falls within the statutory definition of ...'regulation.'" *CBS Inc. v. Comptroller*, 319 Md. at 694. *See also, e.g., Ex parte Traylor Nursing Home, Inc.,* 543 So. 2d 1179, 1183 (Ala. 1988); *Senn Park Nursing Center v. Miller*, 455 N.E.2d 153, 157 (Ill. App. 1983), *aff'd in part and rev'd in part on other grounds*, 470 N.E.2d 1029 (Ill. 1984); *Burke v. Children's Services Division*, 552 P.2d 592 (Or. App. 1976), *aff'd*, 607 P.2d 141 (Or. 1980). This office, too, "has consistently construed the definition of 'regulation' as broadly as its language and apparent underlying intent direct." 72 *Opinions of the Attorney General* 313 (1987) (Maryland Racing Commission's policy regarding Arabian racing). *See also, e.g.,* 70 *Opinions of the Attorney General* 208 (1985) (automatic waiver program as to certain tax penalties); 66 *Opinions of the Attorney General* 151 (1981) (Home Improvement Commission policy change).[4]

In our view, the criteria for evaluating the alleged indigency of defendants seeking representation by the Public Defender fall within the definition of "regulation." The criteria are "a statement" having "general application" to all defendants applying for representation, and this statement has "future effect" for that class of defendants. SG §10-101(e)(1)(i) and (ii). Further, the criteria were adopted by

---

[4] As one commentator has stated, a broad construction is "necessary to defeat the inclination shown by some agencies to label as 'bulletins,' 'announcements,' 'guides,' 'interpretive bulletins,' and the like, announcements which, in legal operation and effect, really amount to rules and then to assert that [they] are not technically rules but merely policy statements, and hence may be issued without observance of the procedures required in connection with the adoption of rules." 1 Cooper, *State Administrative Law* 108 (1965).

the Public Defender to "detail or carry out a law that the unit administers."  SG §10-101(e)(1)(iii)1.  And, in light of SG §10-101(e)(1)(iv), the form of the criteria − a chart within a manual − is immaterial.[5]

## C.     *"Internal Management" Exclusion*

The APA's definition of "regulation" contains three express exclusions:    statements  concerning  "internal  management"; responses  to  petitions  for  the  adoption  of  regulations;  and declaratory rulings.  SG §10-101(e)(2).  Obviously, the eligibility criteria of the Public Defender are neither a response to a petition for adoption of a regulation nor a declaratory ruling.  Accordingly, they are excluded from the definition of "regulation" only if they fall within  the  "internal  management"  exception  −  that  is,  if  the "statement" embodying the criteria (1) "concerns only [the] internal management of the unit"; and (2) "does not affect directly the rights of the public or the procedures available to the public."

Whether the eligibility criteria are exempt from rulemaking by virtue of the "internal management" exception depends primarily on their effect on the public.  The exception applies only if there is no significant effect either on the "procedural steps that interested persons must take in their dealings with the agency or the allocation of substantive benefits or burdens."  72 *Opinions of the Attorney General* 230, 235-36 (1987) (State's smoking policy guidelines fall within "internal management" exception).

Examples of statements that have little effect on the public include instructions merely "spell[ing] out operational details like what forms to fill out, what approvals to obtain, or what evidence to look  at  to  determine  whether  an  applicant  meets  a  statutory standard."  72 *Opinions of the Attorney General* at 235.[6]  Statements

---

[5] The Public Defender is empowered under Article 27A, §5(3) to formulate and adopt regulations "to effectuate the purposes of this article and  to  promote  the  efficient  conduct  of  the  work  and  general administration of the office ...."

[6] Many details of the application process contained in the Public Defender's intake manual undoubtedly do satisfy this test for the internal management exception.  *Cf.* 61 *Opinions of the Attorney General* 3, 4 (1976) (rules governing procedures for panel attorneys are within internal

(continued...)

that have a greater effect on the public include those that "impose application procedures, *establish eligibility criteria not set forth in a statute, restrict access to a statutory benefit,* or impose fees." *Id.* (emphasis added).

In a pertinent and instructive case, the Connecticut Supreme Court struck down that state's attempt to rely on a prior approval requirement, which had not been adopted in accordance with the Connecticut APA, to deny public assistance benefits to pay the moving expenses to an otherwise qualified applicant. *Walker v. Commissioner, Dept. of Income Maintenance*, 446 A.2d 822 (Conn. 1982). The court held that the internal management exception did not apply to the addition of the prior approval process, because such a process "affects the substantial rights of the potential recipients." 446 A.2d at 825.

Given that the eligibility criteria directly affect the rights of potential recipients of the legal services of the Public Defender, the internal management exception cannot apply. Someone who earns less than a given dollar amount will obtain representation; someone who earns more will not. The APA is intended to ensure that the affected members of the public will have a chance to comment on an agency's line-drawing exercise of this kind. Eligibility criteria that have a substantial impact on the rights of defendants applying for representation may be given effect only if adopted through the APA rulemaking process.

### III

### Public Disclosure

Once the eligibility criteria are proposed as a regulation, obviously they will be public. But even before that time, we conclude that the criteria are open to public inspection.[7] Under SG §10-613(a), "[e]xcept as otherwise provided by law, a custodian shall permit a person or government unit to inspect any public record

---

[6] (...continued)
management exception).

[7] In light of this conclusion, we need not consider whether the District Advisory Council would have an entitlement to inspect the criteria even if the public generally did not.

at any reasonable time."[8]  No provision of the Public Information Act, or any other law of which we are aware, would authorize the Public Defender to deny a request to inspect the criteria.[9]

## IV

## Conclusion

In summary, it is our opinion that the eligibility criteria established by the Public Defenders Office must be adopted under the rulemaking procedures of the Administrative Procedure Act in order to be legally effective.  These criteria are open to public inspection.

J. Joseph Curran, Jr.
*Attorney General*

Jack Schwartz
*Chief Counsel*
 *Opinions & Advice*

---

[8] The criteria are a "public record."  *See* SG §10-611(f).

[9] While we recognize the Public Defender's legitimate concern about applications that might be tailored to meet known criteria, other agencies respond to this problem by including verification requirements in their regulations.  *See, e.g.,* COMAR 07.03.17.07A (Food Stamp Program requires "the use of third party information or documentation to establish the accuracy of statements on the application").  If such verification measures were judged not feasible for the Public Defender's intake process, a change in the statute will be necessary to exempt the eligibility criteria from APA rulemaking requirements and the Public Information Act.